## Case No. 7,695.

### KENDRICK v. EMMONS.
### SAME v. NICHOLS.

[2 Ban. & A. 208;[1] 9 O. G. 201.]

Circuit Court, D. Massachusetts. Dec., 1875.

PATENTS—MISTAKE IN DESCRIPTION—EQUIVALENT DEVICES—FOREIGN PATENT—EFFECT OF.

1. An obvious mistake in description made in copying the specifications of a reissued patent, and which can easily be corrected by reference to the other parts of the patent and the machine described, does not impair the rights of the patentee.

2. Under the act of 1839 [5 Stat. 353], an inventor had the right to take out his patent for the full term, notwithstanding that he had obtained and published a foreign patent within six months.

3. The provision of the act of 1839, with reference to the effect of the invention of an American patentee having been patented in a foreign country more than six months prior to his application for a patent in the United States, refers to the fact of its having been patented in the foreign country by said patentee. If the foreign patent was taken out surreptitiously by some one who without the knowledge of the American inventor and without authority from him, in an endeavor to appropriate the benefits of the invention, the inventor would not thereby be deprived of his rights to an United States patent for the full term.

4. Equivalent devices, acting in the same combinations, to accomplish the same result as in the patented combinations, are not relieved from liability to the charge of infringement, because they accomplish more than the devices in the patented combinations.

[Cited in Norton v. Jensen, 49 Fed. 863.]

[These were bills in equity by John Kendrick against Thomas A. Emmons and by the same plaintiff against John F. Nichols for an injunction and an account.]

Chauncey Smith, Benjamin F. Thurston, and William W. Swan, for complainant.

Benjamin F. Butler and A. K. P. Joy, for defendants.

SHEPLEY, Circuit Judge. The principal questions presented in this case were fully heard and argued upon the motion for an injunction pendente lite. Upon a careful revision of the case and of all the new evidence now before the court, no good reason appears for any modification of the views expressed upon the hearing of the motion. The reasons are fully stated in the opinion

[1] [Reported by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

upon that motion, and it is not necessary to repeat them. The conclusion is that the bifurcated plate in the English machine, constructed substantially according to the patent to Ellis and Sladdin, sealed July 12, 1864, and sometimes described as the retainer or fork, as well as the contrivance substituted for it in the Sladdin machines in evidence, which perform the same office, are infringements of the third and fourth claims of the reissued patent No. 5,282 to Joseph Winsor, for an improvement in machines for making weaver's harness.

Additional evidence and elaborate opinions of experts have been introduced at the final hearing upon the disputed point, whether, in the machines of the Sladdin type, the size of the loop is gauged by the needle or by the retainer and its substitutes. Question is also made whether the fingers in the Winsor machine, in fact, gauge and determine the size of the loops. The theories of the defendants' experts upon this subject are ingenious and elaborate; but, upon a close examination of the two machines, when operating to make heddles, one cannot fail to discover that, as a practical result, the length of the loop in the heddle is limited in the Winsor machine by the fingers $W^1$ and $W^3$, and in the Sladdin machine by the bifurcated plate or retainer. Each of these devices determines the size of the eye or loop by a gauge outside of the eye itself, and this operation constituted one of the prominent features of Winsor's invention. This feature of his invention enables him to dispense with the use of the laying-bar around which the eye of the heddle had before been formed, and thus to dispose of one of the great obstacles in the way of making a loom-harness automatically, which Winsor was first to accomplish. This office of determining the distance, from each other, of the two extremities of the eye by a limiting device outside of the eye itself, the retainer of the English machine performs, for the same purpose and in substantially the same manner, as the fingers in the Winsor machine.

The mistake in copying the specification in the reissued patent, by which the hooks are supposed to be described as gauging the length of the eyes, is so obviously a mistake in description, and so easily corrected by reference to the other parts of the patent and the machine described, that it does not impair the rights of the patentee. The word "they," when used in that clause of the specification for the second time evidently refers to the fingers and not the hooks as determining or gauging the size of the eye.

It is contended that as letters patent had been granted on the invention in England in April, 1854, for the term of fourteen years from their date, prior to the application for letters patent of the United States, the letters patent of the United States expired

with the English patent, and could not be legally extended after the expiration of that patent.

The English patent was not sealed previous to the 15th of June, 1854. It was taken out surreptitiously by some one who, without the knowledge of the American inventor and without authority from him, endeavored to appropriate the benefits of his invention. If a person had thus surreptitiously taken out letters patent in this country for the invention of another who was diligently perfecting his invention, he would not thereby have deprived the real inventor of any rights. It is not believed that by taking out in advance an English patent he could accomplish more than he could have done by taking out letters patent in this country. Moreover, as the English patent was not sealed prior to June 15, 1854, it was not more than six months prior to the application for letters patent in this country, and, under the act of 1836, he had a right to take out his patent in this country for the full term, although he had taken out one in a foreign country, the same having been published at any time within six months next preceding the filing of his specifications and drawings. The act of 1839 [supra]. was not intended to limit the inventor's rights under the act of 1836 [5 Stat. 117], but to enlarge them. He still had the right to take out his patent for the full term, notwithstanding that he had obtained and published a foreign patent within six months. But, after the six months, he had, for a further specified time, a right to take out his patent, subject to the conditions and limitations specified in the act of 1839. But the provision in the act of 1839, with reference to the effect of his invention having been patented in a foreign country more than six months prior to his application, evidently refers to the fact of its having been patented by him, the applicant for the American patent.

In the interlocutory decree made on the motion for a preliminary injunction. and in what has hereinbefore been stated upon the subject of infringement, reference has been had solely to the infringement of the third and fourth claims of the reissued patent. The question of infringement of the eighth claim remains to be considered.

The eighth claim is for: "8. The combination of the sliding-bar, or its equivalent, and the rods, acting together, substantially as described, whereby the leese is preserved after it is formed, and the heddles drawn away from the locality where they are formed by the reception of the heddles as they are formed, on the stationary slats, and the movement of the sliding-bar. or its equivalent, and the band attached thereto, to which the heddles are tied in the process of formation."

Winsor's rights under this claim also are to be considered in the light of the fact that prior to the date of his invention there had never been a machine constructed in which was organized any apparatus for making the difficult side of a weaver's harness, combined with a sliding-bar, or its equivalent, for drawing away the heddles; nor had there, prior to the invention of Winsor, been any machine having any combination of the sliding-bar, or any equivalents of any such rods as are described in the Winsor patent, for receiving and preserving the leese of the heddles. The evidence in the record proves that the Winsor invention antedates any devices which are relied upon as anticipating this portion of the Winsor invention.

In the Ellis and Sladdin machine we find the same sliding-bar for removing the heddles from the locality where they are formed, combined with automatic arrangements for making the heddles. We find, also, slats securing, and preserving the leese supported by one end only, as in the Winsor machine. so as to afford the facility of securing the twine at one of their sides, or the other, by passing them by the end, and by receiving them as they are formed upon the free end. in combination, as in the Winsor machine, with the screws and yoke for moving the heddles along. The Ellis and Sladdin devices appear to be equivalent devices acting in the same combinations to accomplish the same result of preserving the leese after it is formed, and although they, by assisting to form the leese. do more than similar devices do in the Winsor patent, that does not relieve them from liability to the charge of infringement. The defendants must, therefore, be held to have infringed the third. fourth, and eighth claims of the reissued patent. Decree for injunction and account as prayed for in the bill.

[For another case involving this patent, see note to Kendrick v. Emmons, Case No. 7,694.]