## TWIN FALLS SALMON RIVER LAND & WATER COMPANY ET AL. *v.* CALDWELL ET AL.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 8. Argued March 3, 1924.—Decided October 27, 1924.

1. Where the existence and merits of a controversy brought into an equity cause by a supplementary petition and decided by the District Court were adequately revealed by the record taken to the Circuit Court of Appeals, though the supplementary petition itself was omitted, but the court, misled by this omission, reversed the decree upon the ground that the matter, for lack of a pleading, was not before the District Court, it was not necessary, when the

mistake was called to its attention by a petition for a rehearing accompanied by a transcript embodying the omitted pleading, that it should grant a rehearing before recalling its first decision and deciding the appeal on the merits, the term not having elapsed and a full hearing having been had at the beginning. P. 89.

2. The laws of Idaho concerning irrigation projects under the Act of Congress known as the Carey Act (c. 301, § 4, 28 Stat. 422,) provide that assessments for maintenance and operation, where the operating company has not come under the control of the settlers, shall receive the approval of the State Land Board before payment is exacted from the settlers, making it a condition to such approval that the Board be satisfied that the proposed expenditures for which the assessment is made are necessary for the maintenance and operation of the irrigation works and are proper charges against the settlers. *Held,* that an act of the Board, purporting to approve an assessment tentatively as for maintenance, leaving for future determination the question whether the work in view was indeed for maintenance, or construction work for which settlers could not be assessed, and providing that, in the latter event, the Board would require that amounts collected be credited on settlers' contracts for water rights or be repaid them in cash by the company—was in effect no approval, and that settlers were entitled to repayments of amounts collected under it by the company. P. 90.

3. As the Idaho law does not vest the State Land Board with power to adjudicate rights to repayment of moneys thus wrongfully collected, their adjudication in the courts is not an encroachment on the province of the Board. P. 92.

4. Concurrent findings of two lower courts that work for which an irrigation assessment was made was construction work and not for maintenance, *held* sustained by sufficient evidence. *Id.*

272 Fed. 356, affirmed.

APPEAL from a decree of the Circuit Court of Appeals affirming a decree of the District Court requiring the appellant company above named to repay to settlers on an irrigation project moneys collected from them by assessments to defray the cost of certain work thereon.

*Mr. Oliver O. Haga,* with whom *Mr. McKeen F. Morrow* and *Mr. J. L. Eberle* were on the briefs, for appellants.

*Mr. James R. Bothwell* for appellees.

MR. JUSTICE VAN DEVANTER delivered the opinion of the Court.

This appeal presents a controversy over an assessment for operation and maintenance of the Salmon River irrigation project in the State of Idaho.

In 1914 eight settlers under the project, for themselves and all others similarly situated, brought a suit in equity in the United States District Court to obtain a comprehensive adjudication of various disputes which had arisen respecting the relative rights and obligations of the parties interested in the project,—the court's jurisdiction being invoked because of the involution of the construction and application of the Carey Act, c. 301, § 4, 28 Stat. 422, and its amendments. The principal defendant was the company which had contracted with the State to construct the irrigation works and to sell necessary water rights to settlers; and another was the company which was to operate and maintain the works when completed, but which was as yet under the control of the construction company. The early proceedings in the suit are reported in 225 Fed. 584, and 242 Fed. 177.

In 1919, while that suit was still pending, the two companies—one still under the control of the other—made and sought to collect from the settlers an assessment of fifty cents per acre to defray the cost of work about to be done on a section of the irrigation works called the check basin. The assessment was made as part of an annual maintenance charge which the settlers were to bear; but they refused to pay because they regarded the work as construction work the cost of which was to be borne by the construction company. The companies threatened to shut off the water if payment was not made; and one of the plaintiffs in the equity suit, for himself and all other settlers, brought an action in a court of the State

to have the assessment annulled and to enforce delivery of the water.

During a subsequent hearing in the equity suit the defendants therein, who were also defendants in the action brought in the state court, presented to the District Court a petition setting forth the institution of that action, alleging there was such relation between the two proceedings that their prosecution in distinct tribunals would embarrass the parties and lead to possible conflicts of authority, and praying for an injunction against the prosecution of the proceeding in the state court. An informal but extended discussion followed, in which counsel on both sides recognized the propriety of drawing the whole matter into the District Court. Counsel for the plaintiffs took the position that, if the injunction was granted, there should be some provision assuring prompt repayment to the settlers if the assessment was collected and their objection to it afterwards was sustained by the court. Counsel for the defendants assented to this and indicated that the defendants or some of them stood ready to give a bond of that character. Accordingly the court, with full acquiescence of the parties, entered an interlocutory order (a) enjoining the prosecution of the action in the state court, (b) requiring the construction company within a limited time to execute a bond to repay within thirty days all moneys collected on the assessment if the court determined it was a construction charge to be borne by that company rather than a maintenance charge to be collected from the settlers, and, (c) enjoining the collection of the assessment if the bond so required was not given. The bond was given and the settlers paid the assessment. Subsequently, after a due hearing, the court rendered a decree determining that the work was construction work the cost of which was to be borne by the construction company, and requiring that company to repay to the settlers within thirty days the amounts collected from them.

The defendants appealed to the Circuit Court of Appeals, which at first reversed the decree, but later in the same term, on finding that it had proceded on a mistaken understanding of the circumstances in which the District Court came to adjudicate the controversy, changed the reversal into a decree of affirmance.   272 Fed. 356.   The appeal to this court is from that decree.

1. The defendants complain that the Circuit Court of Appeals in changing its decision acted on an application for rehearing and evidence submitted therewith without granting a rehearing.

It is true that the change in decision was prompted by an application for rehearing, but not that any evidence was submitted with the application.   What the defendants refer to as evidence was not such, but was a supplemental transcript containing their petition for an injunction against the prosecution in the state court of the action relating to the assessment.   The petition had not been included in the original transcript sent to the Circuit Court of Appeals; and that court, finding no pleading relating to the controversy over the assessment, held that the District Court had no occasion to adjudicate the controversy, and accordingly reversed its decree.   When that decision was announced the plaintiffs obtained the supplemental transcript and, under a prior stipulation permitting omissions in the record to be supplied, filed it in the Circuit Court of Appeals with an application for rehearing.   The court then recalled its first decision and substituted another dealing with the merits of the controversy and affirming the decree.   The second decision was given at the same term as the first, and therefore while the matter was still within the court's control.   An examination of the two transcripts shows that the supplemental one served only to bring sharply to the court's attention what already appeared in the original—that the controversy was laid before the District Court in circum-

stances which made it admissible and appropriate for the court to proceed to its adjudication. Among other things, the original transcript set forth at length the discussion had when the defendants presented the petition for an injunction, and also contained the interlocutory order made at the time and the bond given under that order. The discussion, as set forth, disclosed the substance and purpose of the petition, the nature of the controversy over the assessment and a tacit consent of the parties that the matter be dealt with on the lines followed in the interlocutory order and bond. The ultimate decree recited that it was rendered after a hearing had under the order and bond. In short, the original transcript showed such a submission of the controversy that the absence from the record of the petition for an injunction was not material.

In our opinion it was quite admissible in the circumstances for the Circuit Court of Appeals to change its first decision and correct the mistake therein by disposing of the merits without granting a rehearing. The parties had been fully heard in the beginning.

2. The defendants further complain that in adjudging that the moneys collected on the assessment should be repaid to the settlers the court failed to give proper effect to what the State Land Board had done in the matter and encroached on the board's province.

By the laws of the State the board is invested with authority to supervise the fulfilment of contracts for the construction of irrigation works under the Carey Act and to accept the work when completed. But there was no acceptance in this instance. One of the state laws, c. 14, Sess. Laws 1917, requires that assessments for the operation and maintenance of such works, where the operating company has not come under the control of the settlers, which was the case here, shall be submitted to and receive the approval of the board before payment is exacted. This assessment was submitted to the board, and the

settlers objected that it was not for operation or maintenance but for construction. A hearing resulted in the adoption by the board of a resolution declaring that it was not then prepared to pass definitely on the matter and would secure further data during the approaching irrigation season on which to rest a definite conclusion, but that it would temporarily approve the assessment as one for maintenance in order that the money might be collected and the work proceed, and if it ultimately concluded that the work was construction work it would require the amounts collected to be applied as credits on the settlers' contracts for water rights or to be repaid in cash. This was not satisfactory to the settlers, so the matter was taken into court as before shown.

It is not necessary to consider what effect should be given to an unqualified approval by the board, for there was none here. In effect what the board did was to say: "We cannot determine from the data before us whether the work, to pay for which the assessment is made, is construction work which the construction company is bound to do, or is maintenance the cost of which is to be collected from the settlers, so we reserve that question for future investigation and determination; but to tide the matter over we now give the assessment a merely tentative approval, and if we ultimately determine that the work is construction work we shall see that the settlers receive credit on their water-right contracts for the amounts collected or that they are repaid." The state law makes it a condition to giving an approval that the board be "satisfied" that the proposed expenditures "are necessary for the operation and maintenance" of the irrigation works and "are proper charges against" the settlers. This prerequisite was plainly wanting, as is affirmatively shown by the board's resolution, and therefore the tentative approval, only formally given, was in contravention of the statute and of no effect. The law also makes the board's approval a condition to the right to collect an assessment;

and of course where the board does not approve it can give no authority to collect. As the collection was made without the prescribed approval, and therefore without right, the settlers were entitled to repayment. The state law does not purport, nor has it been construed, to vest the board with power to adjudicate rights to repayment of moneys thus wrongfully collected; so their adjudication in the courts is not an encroachment on the province of the board.

3. It is also complained that the findings of fact on which the decree rests are not in accord with the evidence. Of this it suffices to say- that the courts below concurred in the findings and we think there was sufficient evidence to sustain them.

*Decree affirmed.*