CARTER, Commissioner of. Reclamation oт Idaho, v. BLAINE COUNTY INV. CO. et al.

No. 742.

District Court, D. Idaho, E. D.

Nov. 1, 1930.

644

powered by the laws of the state to deal with Carey Act projects, it is his duty to administer the trust imposed by the Carey Act and to secure from a court of equity advice and direction in the administration of the trust, so that the relation of the defendants to the Carey Act lands and water rights involved may be determined and their rights protected. The purpose of the suit thus urged by the commissioner is challenged by certain of the defendants, who have moved to dismiss the bill upon the grounds that the court has no jurisdiction of the subject-matter; that neither the real party in interest, nor the proper party, has brought the suit; that the bill is multifarious, does not state facts entitling plaintiff to equitable relief, and a misjoinder of parties defendant appears.

The scope of the bill is that about 15,000 acres of desert land, situated in the Little Lost River country in Idaho, was segregated from the public domain and made available for reclamation and entry under the Carey Act, an act of Congress (43 USCA §§ 641–648), and the laws of the state. The Blaine County Irrigation Company, the predecessor in interest of the defendant Blaine County Investment Company, entered into a contract with the state in which it agreed to construct an irrigation system for the irrigation of the lands segregated, and incorporated the defendant Blaine County Canal Company, an operating company, in which stock was sold to various settlers on the tract, representing their right to the use and ultimate ownership of water. When the tract was thrown open for entry by the state the irrigation company entered into contracts with the settlers for the sale of water rights to be represented by the stock in the canal company. Some time in 1916 the canal company became insolvent and was unable to complete the system, and its affairs were taken over by the investment company. In 1917 a supplemental contract was entered into by the canal company and the state, in which the canal company agreed to construct the Dry Creek reservoir to make available a sufficient amount of water to supply purchasers of the shares of stock in that company. The investment company in 1916 executed and delivered to the defendants Columbia Trust Company and Frank B. Cook, trustees, a mortgage or deed of trust on the equity or interest of the investment company in the settlers' contracts, securing the payment of $175,000. Further it appears that the investment company, the irrigation company and all others deriving rights through these companies, have failed to comply with any of the contracts with the state, or with

W. D. Gillis, Atty. Gen., S. E. Blaine and Fred J. Babcock, Asst. Attys. Gen., and Richards & Haga, of Boise, Idaho, for plaintiff.

G. F. Hansbrough and J. H. Andersen, both of Blackfoot, Idaho, Jones, Pomeroy & Jones, of Pocatello, Idaho, Frank B. Stephens, Dean F: Brayton, and William J. Lowe, all of Salt Lake City, Utah, and R. W. Jones, J. H. Peterson, O. R. Baum and D. Worth Clark, all of Pocatello, Idaho, for defendants.

CAVANAH, District Judge.

The commissioner of reclamation of the state of Idaho brings this suit upon the contention that, as trustee authorized and em-

the settlers, and have failed to make available an adequate supply of water for the lands of the settlers on the project. Water rights have been sold for 9,131.58 acres, of which 7,146.36 are Carey Act lands, but it is claimed that the water supply available is only sufficient to reclaim not to exceed 5,000 acres. Under the terms of the act of Congress under which the lands were segregated from the public domain for reclamation, and under the articles of agreement between the state and the United States, the time has expired within which the lands may be reclaimed and held by the settlers. The state has made application for patent for the entire project, but the Secretary of the Interior refuses to issue patent for the entire acreage, and plaintiff prays that the defendants be required to set up their respective rights in and to the Carey Act lands and water rights in the system; that the rights of certain defendants be adjudged to be subordinate to the rights of the settlers and subject to the supervisory powers of the Secretary of the Interior and the state; that the defendants Blaine County Investment Company, Columbia Trust Company, and Cook, as trustees, be required to render a full account of all money collected by them on account of the purchase price of the water rights sold for the reclamation of lands to which title cannot be obtained from the United States because of the insufficiency of water to reclaim the lands required by the act of Congress before patent may be issued therefor; that, to preserve and protect the interest of all parties, taking evidence and assembling data for the proper determination of the cause, a receiver be appointed, and that the court advise and direct plaintiff as to his rights, powers, and duties in connection with the administration of his trust. The bill seeks to present a contest between the several groups of defendants, and, when their rights have been determined, the court is requested to direct the plaintiff trustee as to what action he should take, what land should be included in the application to the Secretary of the Interior for patent, what water rights belong to the Carey Act land, and what rights should be eliminated from the project as a basis for the issuance of the patent. While it is prayed that certain water rights and stock of certain defendants be canceled, that the lands and water rights of the defendants Blaine County Investment Company and M. H. Woods, and the bonds and mortgage held by the Columbia Trust Company and Cook, as trustees, are subordinate to the rights of the settlers, and that all water rights under the project be decreed to be subject to the power of the state and the Secretary of the Interior to reduce the project to not exceed 5,000 acres, and for a general accounting by the defendants Blaine County Investment Company, Columbia Trust Company, and Cook, yet the bill has submitted the entire controversy to the court for determination so that the rights of the settlers and all parties concerned can be adjudicated, and the plaintiff trustee be advised and directed as to what further proceedings he should take in the administration of the trust.

It is obvious from the bill that a perplexing situation confronts the plaintiff as a trustee, and which has raised in his mind a doubt and uncertainty as to how to discharge his duties. Under such circumstances, he has not only the privilege, but it is his duty, to seek and obtain instructions and directions from the court. This principle is clearly recognized in 2 Perry on Trusts and Trustees (6th Ed.) § 476a, also 928, where it is said: "As trustees hold the legal title for the benefit of third persons, and as the law forbids them from making any profit to themselves from their management of, or dealing with, the trust fund, so the law protects them from loss if they act according to law in good faith. And in all cases of doubt as to what the law is, and what their conduct ought to be under it, they are entitled to instruction and direction from the court." 39 Cyc. 317; Laughlin v. Griswold, 169 Wis. 50, 171 N. W. 755.

The next question is that jurisdiction is not vested in this court to determine the matters disclosed by the bill, for the reasons that a diversity of citizenship does not exist, and the case is not one arising under the Constitution or laws of the United States; that jurisdiction of the state court has first attached to the subject-matter of the action, and the federal court, under the principle of comity, should suspend all proceedings until the suit pending in the state court has been disposed of.

The basic question in this litigation is the relation of the parties to and under the act of Congress, known as the Carey Act, which authorized the Secretary of the Interior to contract with the state of Idaho for the reclamation of arid public lands of the United States, and for the settlement thereof by actual settlers. 43 USCA §§ 641–648. The Secretary of the Interior, pursuant to the act, adopted certain regulations for the reclamation, settlement, and entry of public lands, and prescribed the form of contract

between the United States and the states in carrying out the purpose of the act. After the contract between the government and the state was entered into, contracts between the state and the construction company and between the construction company and the settlers were entered into, which are subject to the provisions of the said act and the regulations prescribed by the Secretary. These contracts are to be read together in connection with, and the standard imposed by, the act of Congress and the statutes of the state to which they refer. Such statutory provisions are a part of the contracts, and are to be read into them, and, when the act of Congress is considered in this light, and its requirements, which are at the foundation of such a project, a federal question arising under the laws of the United States is presented. This construction and application of the Carey Act, in litigation upon other Carey Act projects in Idaho, has been announced by the Ninth Circuit Court of Appeals, in the case of Twin Falls Salmon River Land & Water Company et al. v. Caldwell et al., 242 F. 177, 184, where the court said: "It is therefore obvious that the act of Congress which lies at the foundation of the case authorized the making of a contract by the United States, through the Secretary of the Interior with any state in which are situated the specified desert lands, and the making of contracts by such states for their reclamation and irrigation. * * * In the execution of the project, the contract between the state and the construction company, and the contract between that company and the settlers, were made. Manifestly, they are to be read together and in connection with the statutes of Congress and of the state, to which the contracts expressly referred." The Supreme Court of the United States, in the case of Twin Falls Salmon River Land & Water Company v. Caldwell et al., 266 U. S. 85, 45 S. Ct. 22, 69 L. Ed. 178, in referring to the jurisdiction of the court, said: "In 1914 eight settlers under the project, for themselves and all others similarly situated, brought a suit in equity in the United States District Court to obtain a comprehensive adjudication of various disputes which had arisen respecting the relative rights and obligations of the parties interested in the project; the court's jurisdiction being invoked because of the involution of the construction and application of Carey Act * * * and its amendments." The Supreme Court also took jurisdiction where its jurisdiction rested upon a federal question, when in considering the application and construction of the

Carey Act (43 USCA §§ 641–648) on such projects in the cases of Commonwealth Trust Company of Pittsburgh v. Smith et al., 266 U. S. 152, 45 S. Ct. 26, 69 L. Ed. 219; Idaho Irrigation Company v. Gooding, 265 U. S. 518, 44 S. Ct. 618, 68 L. Ed. 1157; State of Oregon v. Three Sisters Irrigation Co. (C. C.) 158 F. 346. In a number of other cases instituted in this court and taken to the Circuit Court of Appeals, where irrigation projects were created under the Carey Act (43 USCA §§ 641–648), the courts have recognized that a federal question was involved when in disposing of questions involving conditions and limitations imposed upon the state and settlers before title to the lands should pass from the government to the settlers. Necessarily the provisions of the federal statute will determine the extent of the interest which the settlers have acquired by reason of their entry and reclamation of the unpatented lands, and, if they have not acquired any rights in the irrigation system and water supply and lands, it will be because of a noncompliance with the federal statute.

The further contention is made that, as the state court has first assumed jurisdiction of the subject-matter of the cause, by reason of an action pending there, and a receiver of the investment company having been appointed, this court has no jurisdiction under the rule of comity between courts of concurrent jurisdiction, which requires that the court which first obtained jurisdiction should retain it to the exclusion of subsequent jurisdiction of other courts. Of course the rule of comity, universally understood and adhered to by both federal and state courts, is that, where two actions between the same parties on the same subject, to test the same rights, are brought in different courts having concurrent jurisdiction, the court which first acquired jurisdiction retains it to the end of the litigation. Heidritter v. Elizabeth Oil-Cloth Co., 112 U. S. 294, 5 S. Ct. 135, 28 L. Ed. 729; Pitt v. Rodgers et al. (C. C. A.) 104 F. 387. As appears from the bill, the nature of the suit pending in the state court is one for the foreclosure of the mortgage which does not include the canal and irrigation system and water rights, and that the mortgage is a lien only "upon the equity or interest of the investment company in the settlers' contracts pledged by the investment company with the trustees as security for the payment of said lands." The Carey Act and the statutes of the state do not grant to the construction company a lien upon either the water rights or lands or in-

terest of the settlers in the irrigation system, and the only lien that the construction company has under the act of Congress is one for the cost of reclamation evidenced by the water contracts executed by the settlers, and which is discharged when the amounts due under the contracts are paid. Thus it will be seen that the purpose of this suit, as disclosed by the bill when compared with the nature of the suit pending in the state court, is not similar, as the same parties, or the same subject, or the same rights, do not appear. No effort is made by the present suit to take any of the mortgage assets from the control of the state court, and therefore no conflict of jurisdiction between the state court and this court will arise.

■ It is further urged that, as the suit is brought by the commissioner of reclamation of the state, the proper party plaintiff does not appear, as the state acts as trustee, and not the commissioner of reclamation, for the federal government and the settlers. Under article 4, section 3, of the Federal Constitution, 'Congress has power to determine the manner of disposing of the public lands. Kean v. Calumet Canal & Improvement Co., 190 U. S. 466, 23 S. Ct. 651, 47 L. Ed. 1134. The Carey Act authorizes the segregation of the lands to the state, and vests in the state authority to provide for their settlement and reclamation, and it is made the agency through which the lands might be reclaimed under the terms prescribed by Congress. Twin Falls Salmon River Land & Water Co. v. Caldwell (9 C. C. A.) 242 F. 177, 183; Idaho Irrigation Co. v. Gooding (C. C. A.) 285 F. 453; State of Idaho v. Twin Falls-Salmon River Land & Water Co. et al., 30 Idaho, 41, 166 P. 220; Bothwell v. Bingham County, 24 Idaho, 125, 132 P. 972. In carrying out this authority, the state of Idaho has, by sections 350, 250, 252, 2996, and 2997, of its statutes, prescribed the procedure, and vested in the commissioner of reclamation of the department of reclamation of the state authority to administer the trust imposed by the federal statutes, as we find that section 350 provides: "The department of reclamation shall have power: * * * 2. To exercise the rights, powers and duties vested by law in the state board of land commissioners (so far as their duties relate to the administration of the Carey act)." The Supreme Court of the state, in the case of Logan et al. v. Carter, Commissioner of Reclamation, et al. (Idaho) 288 P. 424, 425, held that, "by C. S. § 350, the department of reclamation succeeded to and is vested with the rights, powers, and duties of the

state board of land commissioners in relation to the administration of the Carey Act." Attention is called to section 3033 of the state statutes, which provides that all suits brought by the department of reclamation, under the provisions of that chapter, shall be instituted in the name of the people of the state. The present suit is not one brought under the chapter, but one under the general jurisdiction of a court of equity by reason of the federal statutes, and such a suit may be brought by the officer necessary to the proper and faithful performance of his duties. Southern Ry. Co. v. North Carolina R. Co. (C. C.) 81 F. 595. Unless prohibited by statute, a public officer has an implied authority, as incident to his office, to bring all suits which the proper discharge of his official duties require. Troop on Public Officers, § 544. Section 250 of the state statutes provides that the supreme executive power of the state shall be exercised through certain departments, including the department of reclamation, and by section 252 of the statutes it is provided further that "each department shall have an officer at its head who shall be known as a commissioner, who shall, subject to the provisions of this chapter, execute the powers and discharge the duties vested by law in his department." It is thus clear from the provisions of the state statute that the commissioner of reclamation is the official charged with the duties and responsibilities of administering the trusteeship under consideration.

■ With respect to the general question that sufficient facts are not stated in the bill to entitle plaintiff to equitable relief, that the suit is barred by laches and the statute of limitations, and that plaintiff has an adequate remedy at law, it is sufficient to repeat that the bill recites facts sufficient to authorize the plaintiff trustee to come into a federal court of equity and seek advice and direction as to what course he should pursue in the administration of the trust, and, when seeking such advice and direction, he has called upon the court to determine certain disputes existing between the defendants as to their rights, and, when a court of equity has acquired jurisdiction relative to the establishment and enforcement of such a trust and giving advice and instructions to the trustee, it will retain jurisdiction to afford full relief in regard to the preservation of the trust property, and the rights of all parties concerned. The relief here sought cannot be obtained in one action at law, as it is grantable by a court of equity and not by a court of law, and, even so, the jurisdiction

of a court of equity in such a case cannot be taken away by the mere fact that the parties seeking the enforcement of the trust may also have a remedy at law. 39 Cyc. 588. In a controversy involving simply rights in a trust fund, although the only relief sought was a recovery of the money, the Supreme Court of the United States said: "The maintenance of this suit enables the whole question between all the parties to be determined therein, and prevents the necessity of any action at law or other proceeding in the courts for the purpose of determining the ultimate and final rights of all the parties to this suit. Such relief cannot be obtained in any one action at law. Upon all the facts we think that the jurisdiction of the court was plainly established, because under the circumstances the complainants had no adequate and full remedy at law." Clews v. Jamison, 182 U. S. 461, 21 S. Ct. 845, 853, 45 L. Ed. 1183. Where the relief at law would be inadequate and expensive, and involve a multitude of suits, and the element of trust, as here, and a court of equity can determine in one case the rights of all concerned, the court should take jurisdiction because "we are dealing now with the element of trust, which has always been a ground of independent equitable jurisdiction." Thompson v. Emmett Irrigation Dist. (9 C. C. A.) 227 F. 560, 567. Neither the doctrine of laches or statute of limitations should be invoked under the facts stated in the bill, for we are now dealing with a situation involving the performance of the duties of a state officer as a trustee for settlers to whom patent to the lands has not been issued by the federal government to them, and their water rights obtained. It would seem that the delay in so doing was not wholly on the part of the trustee, as the difficulties and controversies recited in the bill are between and caused by the defendants.

◼ As to the charge of multifariousness and misjoinder, which is based upon the ground that Equity Rule 26 (28 USCA § 723) provides that, "if there be more than one defendant, the liability must be one asserted against all of the material defendants, or sufficient grounds must appear for uniting the causes of action in order to promote the convenient administration of justice," and that the liability which the bill complains of was not one which is asserted against all of the material defendants. It will be noticed that the bill alleges that the defendants include all persons that have any right, title or interest in or to the irrigation system, water rights, shares of stock in the operat-

ing company, and lands for which water has been purchased. The new rule has liberalized the former strict rules regarding multifariousness of pleadings and misjoinder, as interpreted by the federal courts, so that the entire matter which presents a common point of litigation may be determined in a plenary suit where all the rights of the parties may be settled and thereby preventing needless multiplicity of suits and inconvenience. 3 Cyc. of Fed. Procedure, pp. 511 to 530. Where causes of action at law are intermingled with causes of action in equity, they are triable in a court of equity under the new rule. In the present suit each defendant has an interest in the essential matters involved as the legal problems arising from the shortage of water, and a construction of the Carey Act and of the contracts are alleged in the bill. All of the defendants are effectively tied together by these contracts, and are interested in them, and in an interpretation of the Carey Act, which brings the case under the principle thus stated. Schell v. Leander Clark College (C. C. A. 8) 2 F.(2d.) 17; Commodore's Point Terminal Co. v. Hudnall (D. C.) 283 F. 150; Commonwealth Trust Co. v. Mack Smith, 266 U. S. 152, 45 S. Ct. 26, 69 L. Ed. 219. The plaintiff, as trustee, by bringing this action, has taken a course which will afford all parties interested an opportunity to have their rights determined by the court before any action is taken that may be detrimental to their rights, and will prevent a multiplicity of suits and expense to those interested.

◼ The further thought with reference to the accounting is a matter incidental to the main purpose of the bill, and, where jurisdiction has once been obtained by a court of equity, it will hear and determine the entire controversy and dispose of incidental matters. This principle is recognized and stated to be in 3 Cyc. of Fed. Procedure, at page 525: "The demand of relief purely incidental to the main object of the bill does not render it multifarious, as where an accounting asked for is incidental to specific performance, or where a bill to subject to the payment of a judgment an equity in certain real property seeks incidental relief by way of cancellation of a release of the judgment. This is not truly a joinder of another cause, being an extension of the relief to completeness." Ross v. Miller (C. C. A.) 252 F. 697; Brown v. Guaranty Trust & Safe-Deposit Co., 128 U. S 413, 9 S. Ct. 127, 32 L. Ed. 468.

The motions of the defendants to dismiss will be denied.